OPINION
{¶ 1} Defendant-appellant, Robert A. Stone, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331, a third-degree felony. Because sufficient evidence and the manifest weight of the evidence both support the trial court's judgment, we affirm. *Page 2 
I. Procedural History {¶ 2} By indictment filed November 29, 2007, defendant was charged with third-degree felony fleeing. The indictment alleged that on July 7, 2007, defendant, while operating a motor vehicle, willfully eluded or fled from a police officer. The indictment further asserted that defendant's operation of the vehicle caused a substantial risk of serious physical harm to persons or property.
 {¶ 3} The matter was scheduled for jury trial on May 13, 2008, but prior to trial defendant waived his right to a jury trial, and the matter was tried to the court. On May 15, 2008, the trial court entered a bench verdict of guilty and scheduled sentencing for June 25, 2008. At the sentencing hearing, the trial court imposed a three-year term of imprisonment and a life-time driver's rights suspension; the court journalized the sentence in a judgment entry filed the next day. Defendant timely appeals, assigning two errors:
 I. The Evidence was Insufficient to Support a Finding of Guilt.
 II. The Verdict was Against the Manifest Weight of the Evidence.
II. First Assignment of Error — Sufficiency of the Evidence {¶ 4} Defendant's first assignment of error contends the evidence is insufficient to support his conviction. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), 10th Dist. No. 93AP-387. *Page 3 
 {¶ 5} Defendant was charged with violating R.C. 2921.331, which provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring a person's motor vehicle to a stop." R.C. 2921.331(B). Ordinarily, violation of the section is a misdemeanor of the first degree. R.C. 2921.331(C)(3). Nonetheless, a violation of R.C. 2921.331(B) may be a felony of the third degree if, as relevant here, "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii).
 {¶ 6} "Substantial risk" involves "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" means, as pertinent here, physical harm that carries a substantial risk of death, physical harm that involves either partial or total permanent incapacity or some temporary, substantial incapacity or physical harm that involves either some permanent disfigurement or some temporary or serious disfigurement. R.C. 2901.01(A)(5)(b) — (d). The statutory definition of serious physical harm also includes "acute pain of such duration as to result in substantial suffering * * * or any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). According to R.C. 2901.01(A)(6), "serious physical harm to property" involves any physical harm to property that either results in substantial loss to the value of the property or requires a substantial amount of time, effort or money to repair or replace it. R.C. 2901.01(A)(6)(a). Alternatively, it involves harm to property that temporarily prevents the use or enjoyment *Page 4 
of the property or substantially interferes with its use or enjoyment for an extended period of time. R.C. 2901.01(A)(6)(b).
 {¶ 7} The state's evidence demonstrated that on July 7, 2007, at approximately 2:30 a.m., Trooper Eric Caudill, Ohio State Highway Patrol, was in a marked cruiser, driving on Georgesville Road, when he saw a 1994 Jeep pull out of Shannon's Pub and proceed in the opposite direction. Because the driver did not turn on the vehicle's headlights, Caudill turned around and began to follow the Jeep.
 {¶ 8} When Caudill saw that the Jeep still had no headlights burning, he "hit his lights" to stop him. (Tr. 12.) Defendant continued, turning left onto Sullivant Avenue. Because defendant continued slowly, Caudill engaged the siren on his cruiser. Defendant turned right into a U-Haul parking lot, but still was traveling slowly. Caudill saw that defendant's window was down a bit, so he used his public address system three times to order defendant to stop. On the third command, defendant accelerated away from Caudill, made his way out of the lot, and drove onto southbound Georgesville Road. Although Caudill initially was unable to gauge the speed of defendant's vehicle, he saw that, once they gained speed, they were well over the posted speed limit. At one point, Caudill observed defendant "was doing eight-five miles per hour" in a 45 m.p.h. zone. (Tr. 13.)
 {¶ 9} Caudill continued to follow defendant's vehicle with his lights and siren activated. Defendant did not comply with the signal, but continued to flee at a high rate of speed "in and out of his lane." (Tr. 14.) Moreover, defendant and Caudill "pulled out right *Page 5 
where Sullivant is, there was a vehicle that was starting to turn right prior to the intersection. [The vehicle] had to brake hard to avoid [them]." (Tr. 14.)
 {¶ 10} Defendant continued southbound on Georgesville Road until he turned onto Holt Road, a 35 m.p.h. zone. Defendant persisted in violating lane markings, failing to signal his turns, and failing to activate the headlights on his vehicle. As defendant and Caudill progressed to Alkire Road, they reached a red light. "[A]t that time a vehicle coming up to intersection came really close to that vehicle." (Tr. 14.) Defendant then turned left onto Alkire Road, a 45 m.p.h. zone, and continued at a high rate of speed. When he reached the intersection of Demorest Road, he violated a red light, continued a short distance, and turned onto Prominence Drive, a 25 m.p.h. zone. About two to three-tenths of a mile from Demorest Road, defendant pulled into the driveway of his father's house and jumped out of his vehicle. Running into the backyard, defendant unsuccessfully attempted to scale a fence, was apprehended, and was brought out to the cruiser parked at the front of the house.
 {¶ 11} During the course of defendant's fleeing, Columbus Police Officer Matthew Rhyne was patrolling the area when he saw defendant's vehicle without activated headlights and the State Highway Patrol cruiser trying to stop defendant. After defendant's vehicle left the U-Haul parking lot, Rhyne followed and ultimately assisted after defendant stopped his vehicle in the driveway on Prominence Drive.
 {¶ 12} The entire pursuit lasted about four to five minutes and covered a total distance of 3.6 miles that included both business and residential areas. During the course of the pursuit, defendant violated two red lights, never turned on the Jeep's headlights, *Page 6 
violated lane markings, used no turn signals, drove left of center on his turns, and violated the various speed limits. According to Caudill, defendant also was talking on his cell phone as he approached Prominence Drive, was not wearing a seatbelt, tested over the legal limit for breath alcohol content while operating a motor vehicle, and, in Caudill's opinion, was driving while impaired. Defendant had no driver's license, was driving his girlfriend's vehicle, and was unfamiliar with it. Caudill testified that, had defendant hit someone at the speed he was traveling, he would have caused serious injury to not only the other person but to himself or his passenger since neither was wearing a seatbelt.
 {¶ 13} Defendant admits he willfully fled from Caudill. He, however, disputes that his actions created a substantial risk of serious physical harm to persons or property. While acknowledging that he need not actually cause injury to violate R.C. 2921.331(A)(5), defendant contends the facts here fail to demonstrate the necessary level of risk to find him guilty of more than a misdemeanor fleeing offense.
 {¶ 14} Contrary to defendant's contentions, the facts are sufficient, if believed, to support his conviction for felony fleeing. According to the state's evidence, the area over which Caudill pursued defendant was not well lit. The lack of lighting, coupled with defendant's not turning on the Jeep's headlights, made him less visible to other motorists. Because the traffic was moderate, the other drivers' inability to see defendant presented a risk of harm. Other factors present only magnified the risk.
 {¶ 15} Specifically, defendant tested over the legal limit for breath alcohol content while operating a motor vehicle; Caudill testified he was driving impaired. While impaired, and with no headlights burning, defendant travelled through commercial and residential *Page 7 
areas at speeds as high as 85 m.p.h. in a vehicle with which he was unfamiliar. Even if defendant's failure to use turn signals and stay within marked lanes may be less significant to determining the risk defendant caused, the trial court properly focused on the intersection where defendant ran a red light, causing a motorist with the right-of-way to brake suddenly in order to avoid a collision with defendant's vehicle. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 19 (concluding a jury reasonably could find that speeding through the dense collection of bars and other commercial businesses and the residential areas adjacent to the university, "running stop signs and red lights in the same vicinity, and driving down the middle of the road while police officers were in pursuit with lights and sirens activated created a substantial risk of harm to persons or property").
 {¶ 16} Moreover, Caudill's testimony presented the details of the substantial likelihood of serious physical harm to persons and property from defendant's driving. When we further consider the additional factor that neither defendant nor his passenger was wearing a seatbelt, we can conclude only that defendant presented a substantial risk of serious physical harm to person or property in fleeing Caudill under the circumstances then present.
 {¶ 17} Defendant's first assignment of error is overruled.
III. Second Assignment of Error {¶ 18} Defendant's second assignment of error contends the manifest weight of the evidence does not support his conviction. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable *Page 8 
minds to find guilt beyond a reasonable doubt. Conley, supra;Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." State v. Raver, 10th Dist. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 19} In support of his argument, defendant notes other evidence in the record that indicated the street was well lit, allowing the few other motorists on the street that night to see him and avoid potential harm. Moreover, defendant testified he did not exceed any given speed limit by more than five miles per hour, did not drive near enough to any car to present a risk of collision and the resulting harm, was not talking on his cell phone until he approached his father's house, and was wearing a seatbelt, as was his passenger.
 {¶ 20} While contesting additional aspects of the testimony the state's witnesses offered, defendant's arguments reduce to a contention that he, not the state witnesses, should be deemed more credible. Defendant, however, "is not entitled to reversal on manifest weight grounds merely because inconsistent evidence was offered at trial," as "[t]he trier of fact is free to believe or disbelieve any or all of the testimony presented." State v. Favor, 10th Dist. No. 08AP-215,2008-Ohio-5371, at ¶ 10. Here, we cannot say *Page 9 
the trial court lost its way in resolving the credibility issues. Even defendant's testimony differed from that of another defense witness, his passenger and then girlfriend, Sarah McManaway. The inconsistency in itself presented a basis for the trial court to discount defendant's version of the events.
 {¶ 21} Defendant's second assignment of error is overruled.
 {¶ 22} Having overruled both of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
FRENCH, P.J., and KLATT, J., concur. *Page 1